## NEWMAN v. RYMAN et al. *

### No. 16789.

Court of Appeal of Louisiana. Orleans.

May 16, 1938.

*Rehearing denied May 30, 1938.

Weiss & Weiss, of New Orleans, for appellant.

Rittenberg & Rittenberg and Moise S. Steeg, Jr., all of New Orleans, for appellees.

JANVIER, Judge.

Paul M. Ryman leased, for a term of months, certain premises in New Orleans to Frank L. Moffitt. The written lease contained a stipulation under which Moffitt was given permission, should his employers transfer him from New Orleans, to vacate the premises and to terminate the lease. Notes at $50.00 per month were given by Moffitt. They were made payable to Ryman. During the term of the lease Ryman sold to Horace H. Newman the outstanding rent notes and, in order to effect the transfer, he, as payee, indorsed the said outstanding notes. At that time Newman was given a copy of the lease and he was advised of the stipulation under which the tenant was given the right, should he be transferred, to vacate and to escape liability on such notes as at that time might remain. When there yet remained four months of the term of the lease, Moffitt was transferred to another city and Newman and Ryman were notified. Shortly thereafter Newman called upon Ryman to pay the outstanding notes. Ryman paid $50.00, the face amount of one of the notes, making the payment in two installments, but he refused to pay more. This suit is the result.

Newman claims that Ryman, as indorser, is liable for the outstanding notes. He also claims that, having paid $50.00, Ryman is estopped to contend that he is not liable for the remaining three notes.

Judgment was rendered in favor of defendant and plaintiff has appealed.

Ryman takes the position that when Moffitt, as maker of the notes, was released, he, as indorser, was also released, and he relies upon paragraph 3 of section 120

of art. 8 of the Negotiable Instruments Act of Louisiana, No. 64 of 1904, which provides that:

"A person secondarily liable on the instrument is discharged: * * *

"3. By the discharge of a prior party."

Counsel for plaintiff concede in their brief that "it is the law, of course, that, if the holder of a negotiable instrument voluntarily releases the maker * * * the latter (indorser) will likewise be released." They declare, however, that that principle cannot be invoked here for the reason that Ryman, the indorser, consented to the release of the maker of the notes and for the further reason that Newman, the holder did not voluntarily consent thereto, but did so only because, by the terms of the written document itself, he was forced to acquiesce.

When the notes were sold to Newman he was made aware of the stipulation and he bought them with knowledge of the fact that there was danger that the maker might demand his release. Since he bought the notes with that knowledge, he cannot be heard to assert that the maker's release was not agreed to by him. His consent was given in advance, but it was nonetheless given. If the lease had not contained the stipulation and Moffitt, desiring to move, had asked Newman for permission and Newman had granted it, surely he could not be heard to say, as against the indorser, that he had not voluntarily agreed to the release of the prior party. No difference exists between that state of facts and those which are actually shown. Here Newman, when he accepted the notes knowing that the lease contained the stipulation for the possible release of Moffitt, agreed in advance to that release, and his agreement is just as effective as if it had been granted later.

Nor does the fact that Ryman also agreed alter the situation. The quoted portion of the Negotiable Instruments Act makes no mention concerning the consent of the indorser, or parties secondarily liable. It provides for the discharge of that person on the discharge of the person primarily liable and we see no reason to interpret that provision as preventing the discharge of the person secondarily liable merely because he also consents to the discharge of the person primarily liable. Of course, if Newman, at the time of the purchase of the notes, had demanded and received from Ryman an agreement that if Moffitt should be released, he (Ryman) would pay the notes anyway, the situation would have been entirely different. But he obtained no such agreement and his release of the maker operated as a release of the indorser.

■ Plaintiff relies to some extent on article 3036 of the Civil Code, maintaining that Moffitt was discharged by reason of a right personal to him and that, therefore, because of the said article, Ryman is not released. That article reads as follows:

"Suretyship can only be given for the performance of valid contracts. A man may, however, become surety for an obligation of which the principal debtor might get a discharge by an exception merely personal to him; such as that of being a minor, or a married woman."

Ryman contends that the article has no application to an indorser as distinguished from a surety. But assuming that the article does affect an indorser and does make him liable even where the maker "might get a discharge by an exception merely personal to him," we think that the words "personal to him" refer to the capacity to stand in judgment and not to a right granted by contract. The article illustrates by suggesting that it is applicable to a surety on a contract made by a minor, or a married woman. Both illustrations (that in the case of the married woman being now affected by the emancipation statutes) involve personal capacity and not contractual stipulations.

■ Plaintiff further contends that defendant is liable by reason of the fact that, having paid an amount equal to the face value of one of the notes, he is estopped to contend that he is not liable on the others. But Ryman explains that payment by showing that when the notes were purchased he received from Newman an amount substantially less than the face of the notes and that, when Moffitt was released, the amount which had been paid back to Newman on the notes was $50.00 less than the price which he had paid for them and that, therefore, he (Ryman), in order to retain the good will of Newman, had paid this $50.00 to make him whole on the transaction.

We cannot see that any estoppel has resulted. If Ryman was not liable on the notes—and we think that he was not—his payment of an amount equal to the face of one of them would not make him liable for all of the others.

Newman was not misled to his prejudice in any way by this payment. He could not

have proceeded against anyone else anyway. He was not prevented thereby from taking any other action since there was no other action that he could take, and the net result of that payment is that he has received $50.00 more than he was legally entitled to.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed at the cost of appellant.

Affirmed.